UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                    Case Number 21-20432

v.                                        Honorable David M. Lawson

LASAIL HAMILTON,

          Defendant.
_____/

**OPINION AND ORDER DENYING IN PART GOVERNMENT'S MOTION *IN LIMINE***

Defendant Lasail Hamilton is charged with illegally possessing a firearm as a convicted felon. The government has filed a motion for permission to introduce at trial certain exhibits and testimony establishing Hamilton's "gang affiliation," including testimony of one or more unidentified "gang experts." The government argues that gang-related literature found in Hamilton's bedroom located in the basement of his grandmother's house where the gun was found, together with evidence showing that he associated with known gang members, plus the testimony of a witness versed in gang culture, will be relevant to showing that Hamilton constructively possessed the gun. Some of the evidence consists of social media posts showing Hamilton in possession of a gun that looks like the one seized from his bedroom. Those posts that occurred over the time period charged in the indictment are relevant and not unduly prejudicial, despite containing images of Hamilton with large amounts of cash and his casual comments about drug dealing. Much of the other evidence discussed below, however, amounts to inadmissible character evidence or offerings whose unfair prejudice substantially outweighs any marginally legitimate purpose the evidence might serve. As to that evidence, the motion will be denied.

I.

Hamilton is charged in a superseding indictment with possessing a firearm (a 9mm pistol) after having been convicted of a felony, contrary to 18 U.S.C. § 922(g)(1). The indictment alleges that he possessed the pistol from July 18 through September 29, 2020. In its motion, the government represents that the gun was seized during the execution of a search warrant at the defendant's grandmother's home, which occurred on September 29, 2020. The pistol was found in a "basement bedroom." The government asserts that "a couple of documents with defendant's name on them, along with handwritten gang literature pertaining to the Vice Lords street gang (AVLN)," also were found in the room.

It is undisputed that Hamilton was not present at the home when the gun was seized. However, the defense says that the government has disclosed evidence that officers surveilled the home on several occasions and saw Hamilton coming and going and meeting persons there, and the government also has produced evidence that the residence address appears on Hamilton's state-issued ID card, which was issued in July 2020. The defense also highlights other evidence to which no objection is presented, including certain text messages and social media communications with various persons where Hamilton acknowledges the address of his grandmother's home as his place of residence. Finally, the defense says that the government interviewed Hamilton's grandmother, who "admitted that Defendant lives with her at the house and stays in the basement where the gun was found."

The government's motion does not conspicuously commit to an enumeration of all items that it intends to present regarding the alleged "gang affiliation." However, the motion included exhibits showing the "gang literature" that was recovered from the basement, which is several handwritten pages memorializing a quasi-spiritual gang credo or "ten commandments." The

government also wants to offer in evidence at least the following items: (1) a series of text messages allegedly exchanged between the defendant and other Vice Lords gang members during April 2020, discussing drug dealing, procurement of weapons and ammunition, and other gang-related business, (2) a video posted by the defendant on Facebook in June 2020, in which he brandishes large amounts of cash, brags that it is "dirty" (obtained from illegal commerce), and says that he always carries a "blick" (slang for gun) to protect himself while involved in drug dealing and other gang business, (3) a video posted by the defendant to Facebook on July 18, 2020, in which he is seen brandishing cash while having a pistol tucked into the waistband of his pants that looks like the same weapon charged in the indictment, (4) photographs and videos posted by the defendant to the Facebook account in August 2020 in which he brags about having a backyard boxing match with his "brothers" in "9$" — which the government says refers to "9 Squad," a known "deck" of the Insane Vice Lords branch of the Vice Lords ("AVLN") gang, and (5) other social media comments posted by the defendant in June and July 2020 about observing gang-related "holidays" or "high holy days" and other aspects of gang affairs.  Finally, the government suggests that it intends to introduce testimony of one or more (unidentified) "gang experts" who would opine about "the common practice of gang members to possess firearms for offensive and defensive purposes and to proudly display real weapons on social media."

      The defense asserts that the scope of the gang affiliation evidence proposed for admission is unclear, but it has received more than "110 paragraphs" of postings from social media that include many photographs of Hamilton posing with drugs (marijuana) and guns while in the company of other gang members.  The defense says that it does not object to the admission of social media photographs and videos (or certain portions of videos) that were posted within the timeframe alleged in the indictment, but it says that much of the other material was posted (and

presumably the displayed conduct occurred) outside the operative time frame. And it maintains that the gang-affiliation evidence is enormously prejudicial and has little or no relevance to the charged crime.

II.

The government has styled its motion as a motion "*in limine*," which typically is used to limit the admission of harmful or prejudicial evidence before the jury can hear it. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (noting that the term is used "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered"). Here, the government seeks the *admission* of evidence, which also is an appropriate use of the motion, since *"in limine"* means "[o]n or at the threshold; at the very beginning; preliminarily." Black's Law Dictionary 896 (rev. 4th ed. 1968). The purpose of motions in *limine* is to obtain advance rulings on the admissibility of evidence so that trial preparation is facilitated, distractions during trial are reduced, legal issues can be deliberated more serenely, and the risk of exposure of the jury to inadmissible evidence can be minimized. *See* Report of Kentucky Study Committee, 1989, p. 5, quoted in Lawson, The Kentucky Evidence Law Handbook, pp. 33-34 (3d ed. 1993); *see also* Fed. R. Evid. 103(c) (requiring the court to "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means").

The superseding indictment in this case charges that the defendant possessed a gun illegally during specified dates in the summer of 2020. To sustain that charge, the government must prove that the defendant knowingly possessed a firearm, which traveled in interstate commerce, with knowledge that he was a prohibited person, here, because he had a prior felony conviction. 18 U.S.C. § 922(g); *Rehaif v. United States*, --- U.S. ---, 139 S. Ct. 2191, 2195-96 (2019). Based on

the parties' submissions, it appears that possession will be the only genuinely disputed element at trial.

The government apparently has evidence of a social media post showing Hamilton with a gun in his waistband, and evidence of the actual firearm that was seized from Hamilton's bedroom in the basement of his grandmother's house. The government believes that Hamilton will argue at trial that the gun seen on the post in his pants was a prop. To connect the actual seized gun to Hamilton, the government wants to show that he was associated with the Vice Lords street gang, and gang literature was found in Hamilton's bedroom along with the gun. The government also argues that gang membership demonstrates the defendant's "opportunity to commit a crime," and it provides a motive for the defendant to possess a firearm.

The government says that this evidence is relevant to the charge of illegal gun possession. That argument is true, as far as it goes. The threshold for establishing relevance is quite low and the relevancy standard is "extremely liberal." *United States v. Whittington*, 455 F.3d 736, 738-39 (6th Cir. 2006). The evidence need only have "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (quoting Fed. R. Evid. 401). It need only have "the slightest probative worth" to qualify as relevant. *Whittington*, 455 F.3d at 738-39 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996). The fact that an item of evidence is insufficient to prove a particular point by itself does not render the evidence irrelevant. 1 McCormick on Evidence, § 185, at 776 (4th ed. 1992) ("An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go to the jury

is one question. Whether a particular item of evidence is relevant to the case is quite another. . . . A brick is not a wall.").

Here, it is difficult to conclude that a jury would not find more likely the proposition that the defendant possessed a gun on the dates charged if it learned that he was a gang member, gang literature was found in his bedroom where the real gun was found, and the defendant had exchanged text messages discussing drug dealing and firearm acquisition. But relevant evidence is not thereby automatically admissible; it must be rejected if it is excluded by the rules of evidence or "other rules prescribed by the Supreme Court." Fed. R. Evid. 402. The defendant argues that the government's proposed gang evidence is inadmissible because it amounts to character evidence used to prove Hamilton's conduct in violation of Evidence Rule 404(a) and (b), and the overwhelming unfair prejudice that the evidence would generate substantially outweighs any marginally probative force the evidence might enjoy, so it is excludable under Rule 403.

To determine admissibility, the government's purpose for offering the evidence is essential. According to its briefing, the government intends to introduce evidence tending to show that the defendant was a member of the Vice Lords gang for two discrete purposes.

First, the government wants to prove that the defendant was a Vice Lords member to bolster its proffer of authentication for the "gang literature" that was found "in the same room" where the gun was seized. The government wants to show that the defendant was a gang member, which it presumably will argue makes it more likely that the "gang literature" belonged to him or was authored by him. It then will argue that because gang literature belonging to the defendant was recovered in the same room as the gun, the presence of that literature makes it more probable that the gun, like the literature, belonged to him.

Second, the government wants to prove that the defendant had a motive illegally to own a gun, which was his professed involvement in gang activities including drug dealing and handling large amounts of cash derived from those activities, as shown by his bragging in social media photos and videos and associated commentary that he carries a gun for self-defense when involved in illegal gang-related business.

A.

The logic of the first proposition is obvious. If the government can prove that the defendant possessed a known item found in a specific place, it is valid to infer that he possessed another, disputed item located in the same place. Applying that proposition here, however, is problematical, because the known item — gang literature — is fraught with negative inferences, and there is no clear indication in that literature connecting it to the defendant. To make that connection, it appears that the government means to dive deeply into gang culture, memes, jargon, and symbology. Nothing in the government's presentation highlights anything in the substance of the defendant's various social media postings that relates in any apparent, substantive manner to the content or characteristics of the documents in question. The documents memorialize what appears to be a sort of credo or pledge adopted by members of "the Nation," which in passing references appears to denote the "Vice Lords" or "A.V.L.N." The government asserts that "a couple of documents" that were seized from the premises — which were not exhibited in the government's motion — have "the defendant's name on them." However, the exhibited "gang literature" does not appear to bear any personally identifying marks or the defendant's name.

Moreover, it is not at all apparent why the government needs testimony of "gang experts" to establish the nature of the documents, what qualifications any proposed expert would have that would allow them to offer the testimony, or how any logical connection would be drawn between

that testimony and the provenance, authorship, or ownership of the papers. For the first stated purpose of either authenticating the documents or establishing a connection between the documents and the defendant, the government has not established that any of its "gang affiliation" evidence is "a step on [an] evidentiary route to [any] ultimate fact" tending to connect the documents to the defendant. *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020).

The probative value of that evidence is marginal, which is not to say that it is irrelevant. As noted above, the relevance threshold is low. But under Evidence Rule 403, the probative force of that evidence must be measured against the unfair prejudice the gang-related evidence carries with it. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citing 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996)). That idea, in turn, "embraces two distinct notions." *Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006). "First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence." *Ibid.* (citations omitted). Here, the evidence could be — and likely would be — considered by the jury as proof of the defendant's bad character. It is unquestioned that under Rule 404(a) and (b), evidence of a defendant's general criminal disposition is not admissible to prove his conduct in a particular instance.

"Second, unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force." *Ibid.* (citing *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (stating that

"[o]therwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury")). This is a simple weapon possession case. Presentation to the jury of unspecified volumes of documentary evidence and expert testimony about the defendant's supposed "gang affiliation" inevitably will have a significant tendency to obscure and overwhelm the essential elements of the charge of possessing a gun while having an (undisputedly) prohibited status. The distraction from the main issues in the case — whether the defendant was a felon and whether a gun found in a home where he was suspected to reside belonged to him — could not be cured with any limiting instruction. Even if some marginal relevance for the evidence of gang affiliation could be conjured, it would be greatly overborne by the substantial unfair prejudice and distraction from the essential issues in the case that would flow from introduction of evidence relating to gang activities or affiliation.

B.

The government's second stated purpose is to prove that the defendant had a motive to possess a gun. The defendant does not challenge the relevance of at least limited portions of the proposed video exhibits that depict the defendant possessing a gun similar to the charged weapon, along with his commentary about carrying a gun while handling large amounts of cash or drugs. It is unclear which exhibits or what portions of them the defense concedes admissibility and how much it wants to keep out. The defense response only asserts that it would ask the Court to "exclude 99%" of what it thinks the government may offer from the material that so far has been disclosed. According to the defense, however, it is not even sure how much of that material the government intends to offer.

Of course, it is impossible for the Court to determine the potential relevance or to balance any prejudicial effect of evidence without knowing what that evidence is, and without viewing it

in the context of other evidence that will be presented at trial. However, considering the specific items that the government highlighted in its brief, the Court can make the following conclusions about their potential relevance.

First, the relevance of a series of text messages allegedly exchanged between the defendant and other Vice Lords gang members during April 2020 discussing drug dealing, procurement of weapons or ammunition, and other gang-related business is questionable at best, since the communications occurred around three months before the charged time frame in the indictment. If the government intends to admit this as "background" or "*res gestae*" evidence, then the temporal remoteness and absence of any other causal connection between the vague comments and the specific gun in question likely precludes admission on that basis.

Second, the relevance of a video posted by the defendant on Facebook in June 2020, in which he brandishes large amounts of cash, brags that it is "dirty" (obtained from illegal commerce), and says that he always carries a "blick" (slang for gun) to protect himself while involved in drug dealing and other gang business, is questionable for the same reasons, due to the temporal remoteness from the charged time frame of the indictment, and the absence of an indication that any likeness of the charged weapon was captured in the video.

Third, the defense concedes the relevance of at least portions of a video posted by the defendant to Facebook on July 18, 2020, in which he is seen brandishing cash while having a pistol that looks like the charged weapon tucked into the waistband of his pants, on the obvious basis that depictions of the defendant personally possessing what looks like the gun in question, within the alleged time frame, will supply direct proof of his guilt. The relevance of portions of the video (which have not been exhibited yet to the Court) that do not feature the defendant visibly possessing a gun is an unknown quantity.

Fourth, the relevance of photos and videos posted by the defendant to Facebook in August 2020 in which he brags about having a backyard boxing match with his "brothers" in "9$" — which the government says refers to "9 Squad," a known "deck" of the Insane Vice Lords branch of the Vice Lords gang — is questionable since nothing in those materials apparently depicts the defendant either possessing a gun or discussing why he would possess a gun. The video's apparent purpose seems to be limited to associating the defendant with a gang.

Fifth, the relevance of other social media comments posted by the defendant in June and early July 2020 making various statements relating to observance of gang "holidays" and other aspects of gang affairs similarly has little or no relevance to any direct proof of the defendant's possession of a weapon. Moreover, any of the posts outside the charged time frame have an even more attenuated potential for relevance due to the temporal remoteness.

Finally, the relevance of the government's proposed testimony by one or more unidentified "gang experts" who would opine about "the common practice of gang members to possess firearms for offensive and defensive purposes and to proudly display real weapons on social media" is impossible to assess without knowing the substance of that testimony. Moreover, the government has made no presentation to establish their qualifications, the factual basis of their opinions, or any basis for assessing the experiential reliability of their testimony.

The government also has not established that any "gang affiliation" evidence logically would bolster the proofs on any element of the crime charged in the indictment, except through an intermediate character inference. "Gang affiliation can be relevant, especially where the interrelationship between people is a central issue." *McGee v. Rapelje*, No. 08-11198, 2010 WL 5475813, at *8 (E.D. Mich. Dec. 30, 2010) (citing *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)). In this case, however, no plausible argument has been made that any "interrelationship

between people" is germane to prove that the defendant constructively possessed a gun that was discovered in the basement of his grandmother's home. For example, there is no allegation that the gun was on the defendant's person during the commission of a particular gang-related criminal act, or that it was procured from any gang-affiliated source. The crime charged here is not possession in furtherance of any particular criminal act or series of criminal acts, but instead merely possession by a person who was prohibited from owning a gun at any time.

It is undisputed that the residence where the gun was seized was the defendant's grandmother's home. No allegation has been made that the premises was any sort of gang hideout, outpost, or armory. None of the proposed evidence about "gang affiliation" relates in any apparent way either to the defendant's use of or dominion over the home, or any part of it, or to any circumstances tending to prove whether or when he possessed or intended to possess the gun at the home. The government says that it wants to prove that the defendant was a gang member in order to suggest that "gang literature" found in the same room as the gun must belong to him, and thereby to argue that the presence of nearby objects known to belong to the defendant bolsters an inference that he also possessed the gun. However, for the reasons discussed above, the "gang affiliation" evidence is of no help on that point, because nothing in the government's presentation says anything helpful about the provenance or substance of the particular documents in question.

The Sixth Circuit has held that evidence of gang affiliation is inadmissible in a case where it bears no logical relevance to any element of a felon-in-possession charge. *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006). Similarly, in this case, the presentation of extensive evidence about supposed gang affiliation is irrelevant to proving any circumstance of the possession offense that has been charged.

Citing *United States v. Woodley*, 727 F. App'x 136 (6th Cir. 2018), the government maintains that gang evidence is allowable to establish a motive for the defendant to possess a gun. But that case is readily distinguishable. Woodley was accused of possessing ammunition during the course of shooting a fellow gang member. He was charged only with being a felon in possession of ammunition under 28 U.S.C. § 922(g)(1). However, the charge stemmed from recovery of a shell casing at the scene of the shooting. The victim testified that the defendant shot him. Another witness testified that he saw a man resembling the defendant fire a shot, and then saw the shooter searching the ground, presumably for the empty shell casing, before fleeing. Testimony about the defendant's relationship with the victim in the course of their mutual gang affiliation was held admissible to show that they had a "deteriorating relationship" that supplied a motive for the defendant to shoot the victim, and evidence of his prior conviction for firearm possession and gang affiliation was admissible to show he had the opportunity to possess guns and ammunition. In this case, there is no immediately associated gang-related incident during which the charged weapon was recovered or is alleged to have been used by the defendant. As discussed above, portions of videos or photos showing the defendant actually possessing a gun (or a gun that looks like the charged weapon), and commentary by him during the period charged in the indictment about why he carried a gun, clearly are relevant to prove that he had both intent and motive to possess a firearm. Beyond that, evidence of his "gang affiliation" has no apparent probative value in the circumstances of this case.

The government's reliance on *United States v. Jobson*, 102 F.3d 214 (6th Cir. 1996), also is misplaced, because in that case the crucial premise for admissibility was that the evidence of gang membership was accompanied by other evidence that membership in the gang afforded members ready access to certain types of weapons that could not be obtained by law-abiding

ordinary citizens. *Id.* at 221. Here, there has been no showing that the charged weapon was unusual in any way or a type that could not be obtained through legitimate channels. Nor has there been any showing to suggest that the specific weapon was obtained from any gang-affiliated source. There is, therefore, nothing in the government's case on gang affiliation tending to show that the defendant had a particular opportunity to obtain the weapon in question by virtue of any gang connection.

The government also turns to an undeveloped argument that the "gang affiliation" evidence qualifies as "*res gestae*" or "intrinsic" evidence of the charged possession. But that argument amounts, in essence, to little more than a ploy for admission of character evidence advancing the idea that gang members characteristically are armed (and dangerous). Evidence offered for that purpose "is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Old Chief*, 519 U.S. at 181. The Supreme Court has explained that "[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt." *Ibid.* Evidence that the defendant is a member of a violent gang fits that bill. Evidence of a defendant's character, say, as a gang member, offered to prove his conduct has come to be categorically excluded "to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 475-476 (1948) (footnotes omitted). And that pre-balancing of this type of evidence has found its way into Evidence Rule 404's injunction that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). That prohibition is repeated in Rule 404(b) for

"[e]vidence of any other crime, wrong, or act" when the evidence is offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

There is a recognized but unlisted allowance (sometimes mislabeled an "exception") under Rule 404(b) for other acts evidence that describes the "background" circumstances that led to the commission of the crime. *See United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018) (describing an "exception to Rule 404(b) for . . . evidence [that] 'consis[ts] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'" *Ibid.* (quoting *United States v. Olds*, 309 F. App'x 967, 974 (6th Cir. 2009)). However, "[t]ypically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). The case law discussing other acts evidence offered for this purpose "imposes severe limitations in terms of the temporal proximity, causal relationship, or spatial connections that must exist between the other acts and the charged offense." *Ibid.* It "cannot be broadly applied to completing a story but must specifically involve past acts that establish a close connection." *Brown*, 888 F.3d at 838.

No probative connection between the alleged "gang activity" in this case and the circumstances of the possession of the gun identified in the indictment has been shown, and the Sixth Circuit has condemned the admission of evidence alluding to a defendant's remote criminal acts where there is no tangible temporal or causal connection between the "background" evidence and the crime charged. *Brown*, 888 F.3d at 838 ("The crime at issue was defendant's possession of the gun, and references to him being violent in the past or having a history of domestic violence

were not necessary or integral to telling the story of what occurred in the early morning on December 25, 2015."). Any evidence of conduct outside the time frame charged in the indictment is temporally and circumstantially too remote to have any plausible connection to the charged offense.

Moreover, even if a proper purpose for the gang evidence could be conjured under Rule 404(b), the Court still must balance its relevance against its unfair prejudice. *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). For many of the reasons discussed above, the gang evidence here is only marginally relevant to a proper purpose, especially when considering the other evidence the government has available to prove direct and constructive possession of the firearm. *See Old Chief*, 519 U.S. at 184-85 (explaining that the trial court's exercise of "discretionary judgment" under Rule 403 "may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives") (citations omitted). That is to say, the evidence's probative value diminishes when there are alternative — and less unfairly prejudicial — means of proof available. *See* 22 C. Wright & K. Graham, Federal Practice and Procedure § 5250, pp. 546-547 (1978) ("The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point"). And for the same reasons, the evidence's unfair prejudicial tendencies substantially outweigh its legitimate probative value.

### III.

Those portions of social media postings that depict the defendant possessing a gun within the charged time frame are relevant as direct proof of his guilt of the charged crime and likely will be admitted if offered at trial. However, evidence of conduct and communications outside the charged time frame likely are too remote to have any logical relevance to illegal possession within

the alleged time frame. Evidence that the defendant is affiliated with a street gang is not admissible for the reasons discussed above.

Accordingly, it is **ORDERED** that the government's motion *in limine* (ECF No. 26) is **DENIED** as to all but the specific portions of exhibits tending directly to prove the defendant's possession within the charged time frame which do not suggest gang membership or affiliation.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   December 2, 2021